**Dentrust Dental International v. Rosenberg**

*Daniel D. McCaffery,* for appellants.
*Sidney L. Gold,* for appellee.

RUBENSTEIN, *J.,* July 26, 2005—On October 8, 2003, plaintiff Dentrust Dental International filed a complaint in equity in the Court of Common Pleas of Bucks County, Pennsylvania, alleging inter alia that defendants David Rosenberg DDS and Bob Montgomery DDS breached the terms of a noncompetition clause in Rosenberg's employment contract with Dentrust by providing portable dental services for existing clients of Dentrust. In their complaint, Dentrust also seeks compensatory damages, punitive damages, attorney's fees and costs alleging a breach of contract by Rosenberg.

The Annsville/Taberg Residential Centers, located in New York, are operated by the Bureau of Health Services, Office of Children and Family Services, State of New York. Dentrust, via contract, provides onsite portable dental services to Annsville/Taberg and to other corporations and governmental entities nationwide.

## PROCEDURAL AND FACTUAL BACKGROUND

On May 15, 1999, Dentrust and appellant Rosenberg entered into an employment contract specifying the terms and conditions of Rosenberg's employment with Dentrust. Under that employment contract, defendant Rosenberg held the position of "Dentist" and agreed to abide by various provisions contained in the contract, including Provision 11, entitled *"Non-disclosure covenant"*:

"The employee recognizes and acknowledges that he will have access to certain confidential information of the company and that such information constitutes valuable, special and unique property of the company. The employee agrees that he will not, for any reason or pur-

pose whatsoever, during or after the term of his employment, disclose any of such confidential information to any party without express authorization of the company." See Provision 11(a) *"Non-disclosure covenant."*

Appellant also agreed to abide by Provision 12, entitled *"Noncompetition covenant"*:

"The employee agrees that during the term of this agreement and after the termination of employee's employment under this agreement for any reason *for a period of two years thereafter, the employee shall not,* unless acting pursuant hereto or with the prior written consent of the Board of Directors of the company, *directly or indirectly* as an individual, partner, corporation, officer of corporation or in any capacity whatsoever: *(a) solicit business from or contract with or perform services for, any persons, patients, company, correctional institution or other private or governmental entity which at any time during the employee's employment by the company (i) is or was a client or customer or patient of company, or Dentrust Dental international Inc., or Dentrust Dental International Inc.,* or Dentrust P.C. or Dentrust Dental P.A., or any of their affiliates, or (ii) has or had a contractual arrangement with company or Dentrust Dental International Inc. or Dentrust Dental P.A. or any of their affiliates for the provision of dental services or dental management services . . . ." See Provision 12, *"Noncompetition covenant."* (emphasis added)

In reliance upon this employment contract, Dentrust provided appellant Rosenberg with dental clients to service, including the Bureau of Health Services, Office of Child and Family Services, State of New York. In addition, in reliance upon this contract, Dentrust provided

appellant Rosenberg with onsite portable dental service training, and access to confidential information of trade secrets, price lists, customer lists, marketing strategies and operational procedures.

According to the complaint in equity, "on November 10, 2002, defendant Rosenberg informed Dentrust, that he planned on (sic) resigning his position of employment with Dentrust. Rosenberg communicated . . . that his resignation would take effect on January 31, 2003." See complaint in equity, paragraph 21.

The complaint further alleges that on December 12, 2002, approximately one and one-half months prior to the effective date of Rosenberg's resignation, Dr. Rosenberg and Dr. Montgomery visited the Annsville/Taberg Residential Centers in New York. See complaint in equity, paragraph 22.

Rosenberg and Montgomery represented to Annsville/Taberg that they were acting on their own behalf and were seeking to enter into an agreement to provide onsite portable dental services for the residents of that facility. Appellants further represented that they were able to provide dental services at the Annsville/Taberg Residential Centers on a weekly basis. Rosenberg represented that he was familiar with New York's juvenile facilities because he provided dental services to them during his employment with Dentrust. See complaint in equity, paragraphs 23-26.

The complaint in equity also states that, "on January 7, 2003, prior to Rosenberg's resignation, appellants Rosenberg and Montgomery began to service the Annsville/Taberg Residential Centers." See complaint in equity, paragraph 27.

In addition, the complaint in equity alleges that defendants Rosenberg and Montgomery surreptitiously conspired to misappropriate Dentrust's confidential information in furtherance of their efforts to violate the noncompetition provisions of Rosenberg's contract of employment with Dentrust. See complaint in equity, paragraphs 28-29. The complaint in equity also alleges that "Rosenberg and Montgomery entered into an illegal scheme and conspiracy, the objective of which was to interfere with the contractual relationships between Dentrust and its current and prospective clients." The contract of employment between Rosenberg and Dentrust also provides:

"Employer acknowledges that a breach by employee of the terms of the covenant will be difficult or incapable of measurement. However, employer realizes that employee may wish to enter into the business of the company or any of its affiliates and accordingly, provides an option of paying for the liquidated damages that would occur if employee enters into the business of company or any of its affiliates in violation of the noncompetion covenant. Employee agrees that in the event of breach of the noncompetion covenant he shall pay to employer, as liquated damages, and not as a penalty, the sum of $250,000." See Provision 13(b) of the contract of employment.

On April 28, 2003, Dentrust sought a preliminary injunction against Dr. Montgomery and Dr. Rosenberg asserting a violation of the employment contract of May 15, 1999, entered into between Dentrust and Dr. Rosenberg. After hearing the testimony presented and reviewing the exhibits and documents introduced by Dentrust, this court concluded that the evidence was uncontradicted that Rosenberg willfully and intentionally violated the

"noncompetition covenant" and utilized Dr. Montgomery to assist him in this endeavor. It was apparent to this court that Dr. Rosenberg enlisted Dr. Montgomery to circumvent the clear mandate of the "noncompetition covenant" which prohibited Rosenberg from servicing Dentrust's customers for a period of two years after his termination or resignation.

This court granted the preliminary injunction and stated as follows:

"I have considered the testimony presented before this court at this hearing and I have reviewed the exhibits introduced into the record as well as the pleadings. I have also considered the arguments of counsel. I'll place of record the following factual basis for this court's eventual order. It is clear and uncontradicted that there was a valid employment contract . . . between David A. Rosenberg DDS and Dentrust. As a part of that agreement, specifically, there is a noncompetition covenant, which is equally clear that the signatory, that being Dr. Rosenberg, may not perform services for any entity that was a client or customer of Dentrust.

" . . . (A)s a part and parcel of that agreement, there is an acknowledgement under paragraph 13 by the employee, that being Dr. Rosenberg, that the company, that is Dentrust, shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages if there is evidence that the terms of the contract have been violated.

"It is clear to this court that Dr. Rosenberg was at all times subject to those terms and therefore aware of his rights, duties and obligations under that agreement. We find also as a fact that in the year 2002 Dr. Rosenberg, as

signatory to the employment contract, was informed by Dentrust that as a part of his duties he would be assigned to the facility at Annsville where he would perform services pursuant to the terms of the contract. That evidence is uncontradicted.

"It's also clear that after 2002, contrary to the agreement not to compete, Dr. Rosenberg, as evidenced by the packet constituting P-5, agreed to provide services at the Annsville Residential Center. This court believes that is a violation, at least presumptively, of his agreement with Dentrust. Now, it's been argued that Dr. Montgomery, who is not a signatory to the employment contract, is therefore beyond the arm of this court in issuing a preliminary injunction. However, this court cannot be blind to what appears from P-5, and that is countersigned by Dr. Rosenberg, is apparently the signature, as well, of Dr. Montgomery. To fail to grant relief under these circumstances would permit Dr. Rosenberg, through the intervention of a third party, to assist him in violating the terms of the agreement. We believe that was not contemplated by the terms of the agreement. We look then to the factors with regard to our decision. The employment contract is in all respects a valid contract for our purposes. Relief, we believe, is therefore necessary to prevent immediate and irreparable harm which cannot be compensable to Dentrust by monetary damages, nor could it be determinable from the state of this record. We believe, as well, that greater injury will result to Dentrust from refusing the injunction than in granting.

"Moreover, we believe, given the intent of the agreement not to compete . . . that restoring the parties to the status quo that existed prior to January of 2003 mandates that there be a remedy for what we find to be wrong-

ful conduct. We believe upon the state of this record, and only upon the state of this record . . . that the wrong by Dr. Rosenberg is manifest, that the injunction is reasonably suited to abate that wrong, and that the activity sought to be enjoined is therefore actionable by Dentrust.

"We will state further that, while we have not ruled upon the merits, it appears that the right of plaintiff to relief is clear. We also note that granting a preliminary injunction will not adversely affect the public interest. Therefore, this court enters the following order:

"The request for (a) preliminary injunction is granted. All of the particulars specified in what has been referred to as the agreed order for preliminary injunction of January 23, 2003, are entered as an order of this court and shall remain in effect as an order of this court until modified. Consistent with Pennsylvania Rule of Civil Procedure 1531(b), we will order and direct that plaintiff, Dentrust, file an injunction bond with the prothonotary of the County of Bucks in the amount of $10,000." See N.T. April 28, 2003, pp. 78-83.

On January 10, 2005, this court held a hearing upon dentist's petition for contempt. The evidence was abundant that Dr. Rosenberg and Dr. Montgomery, in violation of this court's preliminary injunction of April 28, 2003, continued to provide portable dental service to Annsville/Taberg in blatant disregard of the specific prohibition against soliciting and servicing prior clients of Dentrust. This court found both defendants in contempt of the preliminary injunction and entered an order for sanctions stating:

"In paragraph 13(b) there is a specific reference that, in the event of a violation, there should be imposed as liqui-

dated damages as against Dr. Rosenberg the sum of $250,000, and, consistent with that language, we impose as against Dr. Rosenberg the sum of $250,000 as a sanction, and we enter it as an order of this court in favor of Dentrust.

"Now, we have no assurance, despite our order, that there will be compliance.

"This court had to issue a bench warrant (for the defendants) . . . But there's still no compliance, so we will take steps to insure compliance. This court, therefore, in addition to what it has stated, finds both defendants in contempt of its injunction. Both defendants, David Rosenberg and Bob Montgomery, are remanded and committed to the Bucks County Correctional Facility for a period of six months.

"They will be purged of contempt if, within that time period, they do the following: One, provide a full accounting of all monies received from any residential facilities in the State of New York or any other state encompassed by the employment contract. And, two, provide to this court documentary proof that they have severed all relationships with any facility which was previously serviced by Dentrust. Until that purge condition is met, the defendants are remanded to the custody of the sheriff." See January 11, 2005 order.

On January 11, 2005, defendants filed an appeal to the Superior Court and an "Application for relief under Pa.R.A.P. 123." On the same date that the appeal and application was filed, the Superior Court granted a temporary stay of this court's order.

On January 13, 2005, the Superior Court granted the stay, conditioned upon appellants providing "documentary proof" indicating compliance with the terms of the

preliminary injunction and requiring appellants to post a bond in the amount of $250,000.

Since the entry of the Superior Court's orders, various additional filings have occurred. For example, on March 17, 2005, this court denied defendants' motion for summary judgment. As noted from the numerous docket entries, additional filings between March 2005 and June 13, 2005, have occurred, including plaintiff's motion for a protective order and defendant's motion to compel answers to interrogatories. Therefore, the litigation between the parties is still pending and this court has not yet reached the merits of Dentrust's underlying claims for compensatory damages, punitive damages, attorney's fees and costs.

In response to an inquiry by the Superior Court, this court communicated its belief that no opinion was required because the Superior Court granted a stay of this court's January 10, 2005 sanctions for contempt. This court also believed that, because the litigation was ongoing, no opinion was required. On June 29, 2005, President Judge Joseph A. Del Sole responded, and directed this court to file its opinion.

Defendants appeal to the Superior Court of Pennsylvania from this court's January 10, 2005 order. This opinion is filed pursuant to Pa.R.A.P. 1925(b).

## DISCUSSION

The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the constitution. See *Hopkinson v. Hopkinson,* 323 Pa. Super. 404, 470 A.2d 981 (1984). The power to im-

pose sanctions for contempt of court is part of the judicial authority granted to courts of general jurisdiction. See *Woodruff v. Township of Lower Southampton,* 68 Pa. Commw. 171, 448 A.2d 692 (1982).

In a civil contempt case, the party alleging contempt bears the burden of proving contempt by a preponderance of the evidence. *Sinaiko v. Sinaiko,* 445 Pa. Super. 56, 64, 664 A.2d 1005, 1009 (1995). A party commits civil contempt when they (1) have notice of the court order he or she is alleged to have disobeyed (2) acted voluntarily when disobeying the order, and (3) disobeyed the order with wrongful intent. *Marian Shop Inc. v. Baird,* 448 Pa. Super. 52, 56, 670 A.2d 671, 674 (1996).

Throughout this Commonwealth, Pennsylvania courts have preliminarily enjoined and equitably enforced restrictive covenants where the covenants are incident to an employment relationship between parties and where the restrictions imposed by the covenant are reasonably necessary for the protection of the employer. In the present case, there is no allegation that the restrictive covenant is not enforceable. See *John G. Bryant Co. v. Sling Testing and Repair Inc.,* 471 Pa. 1, 369 A.2d 1164 (1977); see also, *Sidco Paper Co. v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976); *Bettinger v. Carl Berke Associates,* 455 Pa. 100, 314, A.2d 296 (1974); *Jacobson & Co. v. International Environmental Corp.,* 427 Pa. 439, 235 A.2d 612 (1967). In *John G. Bryant Co. v. Sling Testing and Repair Inc.,* the court stated:

"It is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm, but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage to the former

employer's business that constitutes the justification for equitable intervention." 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977).

The Pennsylvania Supreme Court has upheld equitable relief from employees who attempt to trade on the business relationships established through their employment in violation of a restrictive covenant. See *Plunket Chemical Co. v. Reeve,* 373 Pa. 513, 95 A.2d 925 (1953); *Boldt Machinery & Tools Inc. v. Wallace,* 469 Pa. 504, 366 A.2d 902 (1976). In the present case, the good will established by Dentrust is precisely the kind of interest which should be protected because it is subject to irreparable harm by the willful and intentional illegal acts of appellants.

Court orders have to be obeyed, and appellants have both flagrantly decided not to follow that course. The restriction in the employment contract was clear, unmistakable and determinable. Dr. Rosenberg was not permitted to provide dental services to prior customers or clients of Dentrust for a period of two years, and he was also not permitted to circumvent that restriction by utilizing Dr. Montgomery as a vehicle to accomplish that illegality. Appellant entered into that contract of employment at arm's length. Appellant knowingly, and with a full understanding of the consequences, signed the contract of employment. Appellant was also well compensated for his services on behalf of Dentrust.

This court finds that, prior to Rosenberg's resignation from his employment with Dentrust, appellants Rosenberg and Montgomery entered into an illegal scheme and conspiracy, the objective of which was to interfere with the contractual relationships between Dentrust's present

and prospective clients. Even after this court specifically enjoined that conduct, both defendants willfully disregarded that order.

We believe the foregoing explains this court's action in finding both appellants in contempt of court.